UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAVATAR GROUP, INC.,

                Plaintiff,

       v.

DEALCLOUD, INC.,

                Defendant.

21-cv-1255 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    Plaintiff Navatar Group, Inc. filed a Complaint in February of 2021 against defendant DealCloud, Inc., alleging false advertising under 15 U.S.C. § 1125(a); deceptive acts and practices under New York law in violation of N.Y. Gen. Bus. Law § 349; false advertising under New York law in violation of N.Y. Gen. Bus. Law § 350; and commercial defamation, injurious falsehoods, unfair competition, and tortious interference under New York common law. (ECF No. 2.) DealCloud subsequently moved to dismiss the Complaint and this Court granted that motion without prejudice to its renewal. (ECF No. 25.) Navatar subsequently filed its Amended Complaint (ECF No. 29) and DealCloud moved within days thereafter to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (ECF No. 31.) For the reasons that follow, defendant's motion to dismiss is granted as to the Lanham Act claim, and the Court declines to exercise subject matter jurisdiction over the remaining claims, each of which arises under New York state law.

I.    BACKGROUND

    As set forth in its Amended Complaint, Navatar provides cloud-based customer relations management software services to global financial customers. (Amended Complaint, ¶ 8.) DealCloud is a direct competitor. *Id* at ¶ 9. According to Navatar, DealCloud has repeatedly engaged in false advertising campaigns against Navatar. One such alleged campaign was the subject of a prior action, which was voluntarily dismissed after the parties negotiated a settlement (*Navatar Group, Inc. v. DealCloud, Inc.*, 18-cv-4428). Navatar alleges that DealCloud has once again engaged in a false advertising campaign and has made false or misleading claims about Navatar to Navatar's current or prospective clients. These false statements include claims that "Navatar is running into some trouble"; "Navatar charges '3 times as much' as DealCloud"; "Navatar is in jeopardy of going bankrupt"; and "Navatar closed 2 deals in 2020 to DealCloud's 200 deals." (Amended Complaint, ¶ 20.)

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept as true all of the factual allegations in the complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Hernandez v. Goord*, 312 F. Supp. 2d 537, 542 (S.D.N.Y. 2004). *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though this standard requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id.*, it "does not need detailed factual allegations," nor does it "impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 555-56. Instead, a complaint need only "raise a reasonable expectation that discovery will reveal evidence" of unlawful conduct. *Id.* at 545. The court's function on a motion to dismiss, therefore, is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

A claim will have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. That standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

III. LANHAM ACT CLAIM

Navatar's Amended Complaint alleges a single claim arising under federal law—false advertising under the Lanham Act. 15 U.S.C. § 1125(a)(1)(B). That provision reads as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

2

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Lanham Act "makes actionable false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003).

To prevail on a Lanham Act false advertising claim, a plaintiff "must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016). In order to be actionable under the Lanham Act, the alleged misrepresentation must occur in a "commercial advertising or promotion."15 U.S.C. § 1125(a).

Courts in the Second Circuit use a three-pronged inquiry to determine whether statements constitute "commercial advertising or promotion" as that phrase is used in the Lanham Act. The statement must be "(1) commercial speech; … (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Boule*, 328 F.3d 84, 90-91 (2d Cir. 2003) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-58 (2d Cir. 2002)). "[T]he touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action." *Fashion Boutique*, 314 F.3d at 57.

The Court granted DealCloud's first motion to dismiss the Complaint in an oral decision and addressed the deficiencies in Navatar's Complaint, focusing primarily on the lack of any substantiation in the Complaint for Navatar's claim that DealCloud's false statements had been "widely disseminated" and the lack of factual support for the allegations of false, misleading, and deceptive activities. (ECF No. 26, at 3:6-7.) The Court noted that the factual assertions in the declaration of Alok Misra, Navatar's CEO, should be incorporated as factual allegations in any amended complaint, because Misra's declaration addressed the falsity of the disparaging statements that DealCloud allegedly made about Navatar in a single email to a single customer.

The Court observed that Navatar, "assuming it's done its homework for the year, would know of additional allegedly false outreach by the defendant to [Navatar's] customer base [that] it failed to put in [the Complaint]" and should set forth those contacts in any amended complaint in order to assert "sufficient factual matter" to meet

3

the standard set forth in *Ashcroft v. Iqbal*. (*Id.* at 5:1-4.) The Court specifically noted that Navatar had listed ten former and current clients who had been contacted by DealCloud and advised, "[a]mong these 10, you must have specifics: So and so received the following statement on or about X date and they are false for the following reasons. That would really firm up what you're missing [in the original complaint]." (*Id.* at 5:22-25.)

## IV. NAVATAR'S AMENDED COMPLAINT

Navatar indeed incorporated Misra's declaration into its Amended Complaint and addressed the falsity of each statement the DealCloud representative made in the single email included in the initial complaint. (Amended Complaint, ¶¶ 22-26.) However, beyond including Misra's comments on the falsity of the statements made during DealCloud's "Current Campaign," Navatar provided just one additional example of alleged false advertising by DealCloud, a phone call between an unnamed DealCloud employee and an unnamed customer that occurred in April of 2021, after this action had commenced and after the Court granted defendant's motion to dismiss the original complaint. (Amended Complaint, ¶ 39.) The inclusion of Misra's declaration helps satisfy the first prong of the Lanham Act test (literal or implied falsity) but does nothing to answer the question of whether these messages were widely disseminated.

Navatar has now specifically alleged two discrete instances of DealCloud making false or misleading statements, and both appear to have been directed at just one customer each. These two statements—one email and one phone call—do not suggest "widespread dissemination within the relevant industry," and more closely resemble "isolated disparaging statements" that "do not have redress under the Lanham Act." *Fashion Boutique*, 314 F.3d at 57-58. Navatar does not clearly define the relevant market, but claims to have close to 100,000 potential users. (Amended Complaint, ¶ 10.) A DealCloud employee sharing false statements about Navatar to two of those 100,000 clients or potential clients cannot plausibly qualify as sufficient market dissemination to constitute commercial "advertising or promotion" within the meaning of the Lanham Act. *Id.* at 58 ("twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers" did not "satisfy the requirement that representations be disseminated widely"); *Burton v. LABEL, LLC*, 344 F. Supp. 3d 680, 702 (S.D.N.Y. Sept. 30, 2018) (holding that an employee "telling an unspecified number of [] clients that he could offer the 'exact same' product at a reduced rate does not plausibly allege a sufficient market dissemination" under the Lanham Act); and *Chamilia, LLC v. Pandora Jewelry, LLC*, 2007 U.S. Dist. LEXIS 71246, at *28 (S.D.N.Y. Sept. 24, 2007) (holding that six statements, most directed at a single individual, in a marketplace of jewelry retailers is insufficient to show penetration of relevant market).

Plaintiff had the opportunity to support a claim of dissemination to the relevant market in any amended complaint, and in fact was encouraged to do so by this Court.

V. REMAINING STATE-LAW CLAIMS

Under 28 U.S.C. 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over related state-law claims if the court has dismissed all claims over which it has original jurisdiction. The only federal claim was plaintiff's Lanham Act claim. That claim has now been dismissed and the Court declines to exercise supplemental jurisdiction over the related claims arising under New York state law.

VI. CONCLUSION

For the reasons set forth above, DealCloud's motion to dismiss the Amended Complaint is granted.

Dated: New York, New York
February 7, 2022

SO ORDERED:

*[signature]*

Sidney H. Stein, U.S.D.J.